Good morning. May it please the court. I'd like to reserve about four minutes. Okay. Please note that the time showing is your total remaining time. Thank you, Your Honor. The issue in this case, on this appeal, the majority of this case, is determined really by a single issue. Do the plaintiff appellants have a property right for their entitlement and expectation of benefits after they filed a workers' comp claim but before there's an adjudicated award? This is a case that was reviewed at the pleading stage as well. So really it's even broader because here the plaintiffs actually pleaded that they met the standards of California Labor Code 3600 at the time they submitted their claim. So really this case is, can there ever, under California law, be an expectation right for an injured employee who files a work comp claim before a judge issues an adjudicated award? Well, the question really is that he may have an expectation, but does California law recognize that as property? Correct. And if you look at what this court held in Jacobson v. Hannafin, it talks about the extent to which the statute contains mandatory language is the relevant question for determining if there's a property right. What have the California court said? Because we're bound by the California court's interpretation of California law. So what California case says that there's a property interest in a workers' compensation claim that has been filed but not adjudicated? What case says that? There is not a California case that has addressed this distinct issue. However, we are dealing with the 14th Amendment protection through the 5th Amendment related to the due process protection. So this is a federal 1983 and RICO claim that it certainly looks to California law. Correct. What do we do with the Angelotti case? Absolutely. So Angelotti, this court decided several years ago, and it related to a different type of property right and a different constitutional issue, namely the takings clause. But didn't we have language in there that said an injured worker's right to benefits does not vest until final judgment? What do we do with that language? This is an unvested property right, and that's what this court said in Bowers v. Whitman is there are some constitutional rights that they're allowed to receive some type of protection for that application, and the court cited to the Perry v. Sinderman case, and I believe the Roth case, the Supreme Court cases, and said there are protections for those, but they are not vested rights. The takings clause applies to a vested right. But you have to have a vested right in order to have a property right as well. Really, though, what the issue here is not whether the right vested, because it clearly didn't based on Angelotti. The issue is whether there's some procedural protections for that right that they are allowed as they submit their claim for benefits. But it first has to be a property right before you have the procedural protection, so we're kind of talking in circles. If it doesn't vest, then it doesn't become a property right, does it? No, there are unvested property rights that are owed some procedural protections under the due process clause. Give us an example. So an example would be this court in Griffith v. Dietrich, and it was a welfare case out of San Diego County, and there was a statute that said if you meet these certain requirements, you have an entitlement to that right of welfare benefits. The mere application itself was a protected entitlement to the process in that. It wasn't a property interest, though. It didn't say that there was a property interest in the welfare benefits. It was the right to proceed further to try to obtain the benefits. And there are procedural protections that are akin to me to unvested property rights, and that's what the Bowers case addresses when it says there's a difference here between a full-blown vested property right and an unvested property right where there are procedural protections for submitting a claim. What are the procedural protections that you were pursuing in this case? I thought you were pursuing substantive relief. It's really both procedural and substantive. There's a substantive due process element where these claims were denied with absolutely no rational basis. It was an arbitrary denial based on conduct to save profits for the cities and the TPAs as opposed to a legitimate review of the claim. We have a RICO action, which is a substantive cause of action. It's not a procedural due process. Correct. The RICO action relates to an injury to property, which I would actually say is a slightly different issue than the 1983 claim, which is also required to show substantive and procedural due process. You distinguish Angelotti by saying, well, that was a takings clause issue, and takings clause jurisprudence requires different interests than it does certain unvested interests. But what do you do with Grasick? Grasick was a plain personal injury case. Nothing is more unvested than a personal injury case. And there they said until you get the WCAB benefits, you don't have a claim. So in Grasick, which Angelotti obviously relied on significantly, involved the same issue as Angelotti, which is a statute retroactively changing the qualifications for benefits. And if that happened here, if the statute said there's no longer these ten specific rules for meeting the comp claim, that would be the same thing. So if, for example, California amended the legislature to say an insurance adjuster can deny the claim for whatever reason it wants, we would not have a vested property right. But what Grasick and Angelotti both address is whether that benefit itself, the workers' comp benefits, can be taken away. That's not the issue here. Every single one of these plaintiffs got their workers' comp benefits two, three, four, five years later. We never would have been able to sue in court and say we need our workers' comp benefits. But Grasick involved a retroactive statute changing the process. That's the process that we say is required here, that there has to be some procedural protections for them as they're submitting a claim. The mere fact of submitting a claim that they met the entitlement to under the ten factors of California Labor Code 3600 entitled them to property protections. That's your process, though. Your process is this exclusive workers' compensation scheme that's been promulgated by the California legislature. That's your process, like it or not. Correct. There is a process that's set, but the California Supreme Court in Vicanti addressed whether that is the exclusive remedy for RICO claims and very specifically said absolutely not. RICO claims are always outside of the exclusive remedy scheme. And there have been quite a few cases as well that have addressed whether an administrative scheme itself is enough to satisfy the procedural requirements under the Due Process Clause federally. But, okay, if RICO is outside the workers' compensation scheme, then you still have to show a property interest that's been interfered with. Correct. And that's our property right is, 99% of it, there is a small issue that I'll address in a second, is an entitlement to benefits creates a property right to receive the fair process. The claim they submitted is allocated protection under the Due Process Clause. And the deprivation of those benefits for years and years and years amounts to a deprivation of a property right. To me, you're mashing together a procedural due process claim into a substantive cause of action, and I don't think that works. There are several cases that have addressed the procedural due process substantive mix. So first, there's a case out of the D.C. Circuit, or D.C. District Court, I apologize, called Winstead that addresses this in significant detail. Do you have a Ninth Circuit case? A Ninth Circuit case, there's a district court in Oregon, Patru V. Roche, it's not a Ninth Circuit case, but it's a district court case, that says submitting a claim can be a substantive and procedural due process property right. There's a Ninth Circuit case called Radish, which is 20 years old, that involves federal workers' comp claims, and that there is a due process right in those applications for those benefits. There's a Second Circuit case called Crable, which is not a workers' comp case, but it involves when the deprivation of benefits amounts to an injury to a property right. And what the Second Circuit held in that case is, that egregious delays absolutely are a harm to a property right. And the D.C. Circuit in Winstead said an application for those benefits, that was a federal workers' comp claim, where employees for the city of D.C. were submitting claims, they were denied egregiously over time and time and time, and the district court said, that is a protected right. In fact, it said... But you said that your clients ultimately got their award of benefits, so isn't that different than the case you're describing if they were denied? No, because our clients were denied initially, two, three, four years occurred, and eventually they received their benefits. Winstead is the exact same thing. They received their benefits eventually, two, three, four years, but there's harm caused when you're refusing to provide wage loss benefits to injured workers. And that's what also the Colorado Court of Appeals addressed in Walters v. City of Denver, the same exact issue. An application, and in some cases a actual workers' comp benefits claim after it, amounted to an injury to a due process protected right. Do you have a case where a RICO claim has been successful under this set of facts? The District Court of Arizona in Miller v. York Risk Services was this identical fax, identical defendant, identical firefighters and police officers for that city. They submitted a claim. Judge Sedgwick of the District of Alaska was sitting on that case, and he held this is an injury to property based on the expectancy of that right to workers' comp benefits under Arizona law. Under Arizona law. Yes. Counsel, should the trial court have treated disability benefits differently from medical benefits? Absolutely. And if the Supreme Court in American Manufacturers v. Sullivan addressed this, where medical benefits you have to show are reasonably related, which is a discretionary function, reasonableness is something that may be in the eye of the beholder, indemnity benefits are automatic where the workers' comp claimant meets the standards set by California Labor Code 3600. There is no reasonable requirement at all. It's automatic. It's statutory. It's a checklist. But they still have to be adjudicated, correct? The language in the statute is mandatory. It says benefits shall be paid. Every disability claim is not paid. No, every disability claim is not paid. But every legitimate disability claim absolutely should be paid. The legitimacy of it has to be adjudicated by the administrative agency. And that kind of goes to the substantive due process claim, which the courts have held, that yes, simply a claim for benefits isn't enough. But where there's an egregious, irrational denial of a claim, despite these mandatory factors where the plaintiff met all these factors, that egregious, arbitrary decision to just deny a claim. For example, if an employee loses a leg and the insurance adjuster says, I'm just going to deny it and make you go to court and three years later you may get lucky and you get paid, but good luck. That's egregious and would violate the substantive due process clause. Counsel, you're down to two minutes and 35 seconds. Do you want to save it? I'll reserve. Thank you, Your Honor. All right. Thank you. Thank you, Your Honor. May it please the court. I'm Peter Simmons on behalf of the York Risk Services Defendants. Seventeen federal judges sitting on three courts of appeals in four different cases have rejected precisely the claim these plaintiffs are pursuing here. The Sixth Circuit did it in Bank in Jackson v. Sedgwick, and again as a panel opinion in Brown v. Ajax. The Fourth Circuit did it in Kinlaw. The Eleventh Circuit did it in Moore v. Potter. Now, amazingly, in neither of their briefs do the plaintiffs even talk about any of those decisions. They just ignore them as they ignored them here this morning. No appellate court has countenanced a RICO claim of the type the plaintiffs are pursuing here, and the reason for that is pretty simple because RICO requires an injury to business or property and workers' compensation is all about personal injury. It's the whole reason the workers' compensation scheme and statute exists. What about the Section 1983 claims? It still requires property. They got their procedural due process. The statute provides an administrative remedy, an exclusive approach, through the Workers' Compensation Appeal Board and, if necessary, through the California State Courts, as an exclusive mechanism to adjudicate their claims, including claims of outrageous behavior, if that's what they think they have. What remedy would be available under the Workers' Compensation Scheme for outrageous denials? I believe, and Mr. Cooper can talk to this in more detail, there are fines and penalties, and then, of course, there are the opportunity under, I believe it's Unruh, to bring California tort claims, including under the Unfair Practices Act, for those kinds of behaviors. But that does not get you a 1983 claim. They got the procedural due process, as Mr. Avery said. They adjudicated their claims through the administrative scheme. They got the process they were entitled to, but that does not mean they have a substantive right to benefit, either for 1983 purposes or for RICO purposes. I understand their claim to be. It's entirely possible that some of the claimants may not be entitled to the benefits they're requesting, but the way I read this case, or understand this case, is the plaintiffs are claiming that your client unreasonably and unnecessarily and with purpose and intent delayed these claims. They delayed the final day of judgment or adjudication for purposes of saving money. That is their claim, but that does not make a RICO claim, and that does not make a 1983 claim. There is a mechanism to adjudicate those claims through the Workers' Compensation Appeal Board process. In order to have a 1983 claim or a RICO claim, substantively, you need to have property. And as Angelotti held, as Graysock held, as Judge Bernal held, and gave them, I think, four chances to fix it in their complaint, they could not show a substantive vested right to property. But it almost doesn't matter because, as those circuit court cases that I referred to a few minutes ago indicate, RICO certainly does not cover the monetization of personal injury claims, no matter how the claim is adjudicated, whether it's slow or not. That was the very claim that was being raised in all those cases was, you're slow paying, you're not paying, I should have a right to these payments faster, sooner, more. And each of those courts of appeals said, no, that doesn't get you a RICO claim, and the federal court should not be in the business of adjudicating the insurance processing of routine claims. There is a mechanism under state law, under the statute, to do that. The entire purpose of the workers' compensation scheme is to avoid case-by-case adjudication and to have a more streamlined administrative mechanism to get people paid without regard to negligence, but also without regard to these fact-based litigations, without having to burden a jury with it, without having to burden the court dockets with it, to put it through the administrative mechanism that deals with this day in and day out. Only they don't like that mechanism. Well, no. I mean, I think it's more than that. That mechanism was created years ago to help workers and to avoid these claims of negligence and this sort of thing in the workplace. The plaintiffs are claiming that your clients, who are the third-party administrators, I believe, were putting their claims on what we can call the slow walk. We'll see in ten years, perhaps. But in the meantime, we're going to present as many delays and obstacles and speed bumps in your way as we can. But, yes, you have a process and we'll follow that process when we get around to it and feel like it. That's kind of the claim that they're making. And does that not create at least a Section 1983 due process violation? No, Your Honor. I don't believe it does because there is a mechanism to deal with that. They are not being denied the Workers' Compensation Appeal Board. We have no control over whether they file an appeal or how quickly they try to process that appeal. How can they appeal anything if there's no final adjudication? Their complaint says we denied them benefits. They can appeal that. They can file petitions with the Workers' Comp Board, I believe, even if we're just ignoring their claims. There is a whole administrative scheme with specialized administrative law judges who deal with this. They just don't like that. They don't like it because it takes some time, and they don't like it because they don't get a jury, and they don't like it because they don't get treble damages like they do under RICO. So they're looking for a way to get around the Workers' Comp system. Look, many people who file insurance claims, Workers' Comp or any insurance say, oh, the insurance company is slowing down my claim. They're not giving me the benefits. And we can't say that every time somebody has one of those and they're unhappy with the way the insurance adjuster or the claims administrator is handling the case that they get to run into federal court and say, you know what, they've done this, and they've done it more than twice, so lo and behold, I've got a RICO pattern. And you know what? This time it happens to be a state agency that's the employer. So now I've got state action. I'm going to tack on a 1983 claim because that's what's going to happen, and that's what none of these cases have said is appropriate. Judge Bernal rejected it. Judge Bernal gave them every opportunity to say, show me a vested property right. Show me something that you could actually say was taken away that you were adjudicated to have a right to, and they couldn't do it four times. Do you think that the allegations of the purposeful delay for economic purposes takes this case out of exclusive WCAB jurisdiction under the UNRWA exception? No, sir, I don't believe it does. Well, in UNRWA, the insurance company went to, I think, a playground, either Disneyland or one of them, and exacerbated the employee's injury by playing with a rope bridge. Why isn't that similar to the purposeful action or inaction of the insurance administrators here? Because everything here is part of the routine handling of claims, the processing and adjudication of claims, not exacerbating it, not going and playing with a bridge. This is the routine handling of claims, and the California Supreme Court reiterated as recently as this summer in the Comp Partners case, after the briefing was completed here, the importance of the fact that all of the routine handling of claims, including dealings with claims administrators and utilization review, and all of that routine processing is all within the exclusive jurisdiction and the exclusive remedies of the WCAB statute. You say it's routine. They say it's purposefully delayed for economic reasons. Isn't that an issue of fact? No, sir. Look, every company, insurance or otherwise, wants to keep its costs down. Any plaintiff can come in, therefore, and say, you know what, you denied my claim, and you were just trying to save money, and that's outrageous. Every single insurance claim, that's going to be the plaintiff's story. The insurance adjustment was planned to be true. But you can't turn that into the federalization of routine handling of claims when there is a state mechanism that the legislature has adopted. Now, I do want to give Mr. Cooper a chance to talk, too, so I would make one other observation, which is Mr. Avery's suggestion that there is somehow some different standard under California law for disability payments as opposed to medical payments. With due respect, there is no basis for that in the statute. The statute dealing with medical and dealing with disability payments, section 4650, the first word of the statute is if. If an injury causes a temporary disability. Then the next section, if the injury causes a permanent disability. There are issues there that need to be determined on a case-by-case basis. It's not an automatic right to payment. First, we have to figure out, is there a disability at all? Is it temporary? Is it permanent? What's the extent of it? Was it caused by the workplace injury? It's no different than the factual determinations that need to be made for medical benefits and whether they're reasonably necessary. It is not a different standard under the statute, and there's no basis to bifurcate the treatment of these claims to say that certain claims we're going to put through the administrative process and certain claims we're going to bring to federal court. So I'm intrigued by your argument that if the plaintiffs were concerned by the timing of the decisions being made and the adjudication process, that there was a remedy for them in state law. And is your colleague going to? I believe Mr. Cooper can speak to that, and given that I promised him five minutes and I'm below that, I do want to see the voting for that. In the future, counsel, if you decide to split time, you need to advise the court in it. I apologize, Your Honor. All right. Thank you, counsel. Good morning, Robert Cooper. On behalf of Corvall Enterprise Comp Inc. and Mixley Hyatt, may it please the Court, to answer Your Honor's question, Judge Rawlinson and Judge Bastian, with regards to the remedies that are available under state law, California Labor Code Section 5814 and Subdivision A and 5814.6 Subdivision A allow administrative remedies in terms of statutory penalties for unreasonably withholding workers' compensation benefits. And the penalties that are allowed by statute are pretty significant. They range from $10,000 to $400,000. That's a lot of money for somebody to intentionally try to expose them. For each violation? So if there were 17 people who were asserting that there was intentional delay, each one of those individuals could theoretically be awarded $400,000? The statute doesn't make express distinction, I don't believe, but the mere availability of that exposure is more than adequate deterrent for a particular TPA not to intentionally withhold. Do the penalties go to the claimant or do they go to the state? Well, there are different types of penalties. The ones that I mentioned, they typically go to the state. There's penalties in terms of attorney's fees. There's costs. How does that reimburse the claimant then? Because there's additional administrative penalties for improper claims handling. There's a separate code section. That's Labor Code Section 129.5, Subdivision A. That allows for attorney's fees, costs, and sanctions for causing unnecessary delays. But no damages remedy. None of that inures to the benefit of the claimant. Well, there's a separate 50% penalty of up to $10,000 for discrimination based on the filing of workers' compensation. Counsel, when do the plaintiffs have the right to file these requests? Is it a separate legal action that they file? No, no, no. These are done all within the administrative regime itself. And do they have the right to bring these claims in the administrative regime prior to a final adjudication of their claims? Yes, absolutely. Is that a recognition by the State of California that they might have a property interest in their benefit adjudication process? It doesn't by itself give rights to vested property interest. And this goes back to the Section 1983 claim as well. Until there's a final adjudication on the merits, there is no vested property interest. I know, Judge Batson, you questioned my friend on the other side regarding a distinction between whether there should be a distinction between disability payments versus medical treatments. Before you get there, and I'm sorry to interrupt, but we started off, I think, with Judge Rawlinson's question of your adversary. Is there recognition under California law that there's a property interest? And he indicated there's no case law that says that. But do we have that recognition via statute? We don't because, as was discussed earlier, it's all conditional. In order to be able to recover, whether it's disability payments or medical treatments, you have to meet certain conditions. The fact that you meet all of the ten elements under Section 3600 by itself, that doesn't establish an entitlement. That's just the beginning of the analysis. It's not the end. And just as another example of a regulatory or statutory basis for this distinction, as a claimant, whether you go to a treating physician who's within the medical provider network or whether you go to a treating physician who's not in the medical provider network, the treating physician has to affirmatively establish and confirm eligibility for compensation, and that includes disability payments for loss of wages. So there's nothing automatic about receiving lost wages, as was suggested by my friend on the other side. And the statutory citation for that is in the Title VIII of the California Code of Regulations, Section 9785, Subdivision B4D, that imposes a mandatory duty on the primary treating physician to affirmatively establish entitlement to compensation, which encompasses the loss of wages. My friend on the other side also mentioned a substantive due process violation. The reason we don't have such a violation here is that the only right at issue is the right to receive statutory benefits under the workers' comp system. We're not dealing with the fundamental rights, such as the right to get married, the right to raise your family, the right to education, the right to privacy. None of those fundamental rights are implicated here, and in the absence of a fundamental right, there is no substantive due process violation in this case. All right, thank you, counsel. Thank you, Your Honors. You've exceeded your time. Thank you. Rebuttal. I wanted to quickly jump to a question about the property rights. In the Bowers Court, this circuit said, the Supreme Court has recognized property rights that were constitutionally protected, such that they were safeguarded by due process but still not vested. That is our argument here. We are not arguing that this is a vested right, but an unvested right submitted with the application for workers' comp benefits, and they met every single requirement of 3600. Counsel, what's your response to opposing counsel's observation that there are adequate remedies in the workers' compensation scheme for the type of claims that you are making here? Absolutely. First, to answer that question, I would point to the Second Circuit in Crable, where that exact argument was made, and the court cited to Cleveland Board of Education v. Loudermill and held that the minimum procedural requirements are a matter of federal law. They are not diminished by the fact that the state may have specified its own procedures that it may deem adequate for determining the preconditions to filing for benefits. The Winstead case said the same thing, too. The Walters v. City of Denver case said the same thing. Simply pointing to the workers' comp system and saying, you can get your benefits there is not enough if due process has been violated. What's your response to opposing counsel's reference to the other circuits that have purportedly denied the same claims that you're making here? I would argue, first, those are all issues distinct in that they're dealing with the Sixth Circuit version of Michigan law and whether a RICO claim exists under that, and the Jackson v. That's what we're dealing with here, whether a RICO claim exists under the workers' compensation scheme in California. Correct, under California law. And under California law, there is a right to benefits based on the lack of discretion in the statute. Related to the injury to property, which I think is what counsel was getting to, this case is bound by D.S.V. Gates, which is the en banc decision from about 10, 15 years ago. And that goes in great detail defining what an injury to property is. And what the court says is where there's false imprisonment, which is a personal injury claim, but it causes some property damage, that is enough under RICO. And here, as the District Court of Arizona said in Miller, we're not arguing that the on-the-job injuries are our claims. It's the harm to the benefits for the submission and long-term denial of those claims. Thank you. Thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Bastian